UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

GYM WORLD, INC.,

BF OF CHELMSFORD, INC.,

BF OF LOWELL, INC.

BF OF SPRINGFIELD, INC.,

BF OF DANVERS, LLC.,

      PLAINTIFFS

V.                                      **CASE No. 20-11162**

CHARLES D. BAKER, in his capacity as the

Governor of the Commonwealth of Massachusetts,

      DEFENDANT

CIVIL RIGHTS COMPLAINT FOR DAMAGES

AND INJUNCTIVE AND DECLARATORY RELIEF

**NATURE OF ACTION AND JURSIDICTION**

1. This is a civil action under 42 U.S.C § 1983 seeking damages, declaratory judgment and

injunctive relief against Defendants for committing acts, under color of law, with the intent and

for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the

United States and the Constitution and Declaration of Rights of the Commonwealth of

Massachusetts.

2.. This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' Constitutional rights to Due Process and Equal Protection under the Fifth and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has Federal Question Jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988. Plaintiffs, therefore, seek damages and declaratory and injunctive relief accordingly.

3. The U.S. District Court for the District of Massachusetts is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work in. their authority in their official capacities, and will continue to enforce the Orders and Emergency Directives; and it is the District in which substantially all of the events giving rise to the claims occurred.

4. This Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiffs' Federal claims.

**PARTIES**

5.  The plaintiff, Gym World, Inc., is a duly organized Massachusetts corporation conducting business under the trade name "Best Fitness" at 265 Chelmsford Street, Chelmsford, Massachusetts.

6.  The plaintiff, BF of Chelmsford, Inc., is a duly organized Massachusetts corporation conducting business at 67 Parkhurst Road, Chelmsford, Massachusetts.

7.  The plaintiff, BF of Lowell, Inc., is a duly organized Massachusetts corporation conducting business at 199 Plain Street, Lowell, Massachusetts.

8.  The plaintiff, BF of Springfield, Inc., is a duly organized Massachusetts corporation conducting business at 1739 Allen Street, Springfield, Massachusetts.

9.  The plaintiff, BF of Danvers, LLC, is a duly organized Massachusetts limited liability company conducting business at 100 Independence Way, Danvers, Massachusetts.

10.  The defendant, Charles D. Baker, ("Governor Baker") is sued in his official capacity as Governor of the Commonwealth of Massachusetts, responsible for issuing the executive orders that cause the injuries complained of, and who has authority to change or modify such orders in a way that would alleviate the Plaintiffs' injuries. As detailed herein, Defendant Governor Baker has enforced the challenged laws, policies, customs, and practices against Plaintiffs and is, in fact, presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs.

## CONSTITUTIONAL PROVISIONS

11. The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws

12. The Fifth Amendment to the United States Constitution provides in pertinent part: No person shall be … deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

13. The Massachusetts Declaration of Rights states at:

Article I: All men are born free and equal and have certain natural, essential, and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing, and protecting property; in fine, that of seeking and obtaining their safety and happiness.

Article 10.  Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. He is obliged, consequently, to contribute his share to the expense of this protection; to give his personal service, or an equivalent, when necessary: but no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. In fine, the people of this commonwealth are not controllable by any other laws than those to which their constitutional representative body have given their consent. And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.

Article XII.

No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defense by himself, or his council at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land.

## BACKGROUND / INTRODUCTION

GOVERNOR BAKER'S EXECUTIVE ORDERS :

14. A novel virus has caused a pandemic illness that is spreading throughout the world, including the United States and the Commonwealth of Massachusetts. It is unclear how long it will take for this pandemic illness to run its course, and estimates have ranged from months to years or more.

15. The Governor declared on March 10, 2020, that there is a state of emergency in Massachusetts due to the growing outbreak of a novel coronavirus and the disease caused by this virus that is known as COVID-19.

16. On March 10, 2020, in response to the COVID-19 health crisis, Governor Baker issued Executive Order No. 591, declaring a state of emergency in the Commonwealth of Massachusetts ("Civil Defense State of Emergency"). *See* Mass. Exec. Order No. 591 (Mar. 10, 2020).

17. On March 23, 2020, Defendant Governor Baker issued COVID-19 Order No. 13, which ordered "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services [to] close their physical workplaces and facilities ('brick-and-mortar premises') to workers, customers, and the public" the next day, on March 24, 2020.  By its terms, this order was to expire on April 7, 2020.

18. COVID-19 Order No. 13 included an Exhibit A in which Defendant Governor Baker designated various types of businesses as "essential" services "based on federal guidance and amended to reflect the needs of Massachusetts' unique economy."

19. Despite the widely known physical and mental health benefits of exercise, the list of "essential" services did not include fitness gyms.

20. At all times material hereto, while certainly not "essential," Governor Baker's Orders permitted businesses such as liquor stores and large "box" stores such as Target, WalMart, Home Depot, Lowes, BJ's, Costco, etc., to remain open while ordering churches and gun stores to remain closed.

21. On March 31, 2020 Defendant Governor Baker issued COVID-19 Order No. 19, which extended Order No. 13 to May 4, 2020, and also revised the list of "essential" services.

22. On April 28, Governor Baker issued an order extending the closure of non-essential businesses and organizations for in-person operations until May 18.

23. On May 1, Governor Baker issued an order requiring the use of masks or face coverings in public situations when appropriate social distancing measures are not possible.

24. On May 15, Governor Baker issued an order extending the closure of non-essential businesses and organizations by 24 hours until 12:00AM on May 19, 2020.

25. On or about May 18, 2020, Governor Baker introduced a four-phase plan for the re-opening of "non-essential" businesses.

26. Fitness gyms are not permitted to open, with restrictions, until "Phase 3" of the Governor's plan at a date that has yet to be determined.

EFFECTS OF THE GOVERNOR'S ACTIONS ON PLAINTIFFS:

27. Plaintiffs have sat entirely idle at the Governor's direction and, as a result, plaintiffs are deprived of the value of their tangible property and facilities while the Orders are in effect.

28. The Plaintiffs' facilities are not usable for any purpose, nor can these affected facilities currently be bought, sold or leased, nor can plaintiffs' property be used to generate income while the Orders are in effect.

29. The COVID-19 Closure Orders have either entirely drained plaintiffs' property of all economic value during their pendency, or have nearly done so; in either event, the diminution of value and government interference caused by these Orders is an unconstitutional taking without just compensation.

30. The plaintiffs have over 25,000 individual members enrolled in their (5) facilities who, prior to March 24, 2020, paid an average monthly fee of $27.00 with some members paying extra fees for personal and/or class training.  The average total monthly revenue for all (5) facilities was $900,000 per month.

31. The plaintiffs are the tenants and parties to (5) individual commercial leases which provide the commercial space for the plaintiff's (5) Best Fitness facilities.

32. As a result of Executive Order No. 13, the plaintiff was forced to close all (5) Best Fitness facilities operating in the Commonwealth of Massachusetts on March 24, 2020 and was forced to suspend all monthly member billings.

33. Plaintiff's adherence to Executive Order No. 13 also forced him to lay all of its 310 staff members and personal trainers.

34. The plaintiff's financial obligations to the various landlords, however, did not terminate and, despite the landlords' demands, the plaintiff has been unable to make the $145,000 in total monthly rent payments since March 24, 2020.

35. The plaintiffs are currently faced with the fact that any further continuance of the defendant's forced closings will require them to either close their facilities permanently or seek protection under federal bankruptcy law.

36. The possibility that the unlawful Orders which forced the closure of plaintiffs' facilities may be relaxed under the defendant's "Phase 3" does not and will not render the plaintiffs' claims moot as the Governor has repeatedly emphasized that he reserves the right to re-impose restrictions at his discretion.

37. The likelihood of the Governor re-imposing such restrictions is great in that countries throughout the world and areas throughout the United States are currently seeing a spike/resurgence in the coronavirus.

38. These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment, and also violate well-established notions of Substantive and Procedural Due Process. For the same reasons they violate the Massachusetts Constitution and Articles 1, 10 and 12 of the Massachusetts Declaration of Rights.

39. All of the plaintiffs' damages are a direct and proximate consequence of the Governor's unlawful Orders and restrictions.

## PLAINTIFFS' FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT T0 THE U.S. CONSTITUTION AND ARTICLES 1, 10 and 12 OF THE MASSACHUSETTS DECLARATION OF RIGHTS

40. Plaintiffs incorporate herein by reference each and every allegation contained in the

preceding paragraphs of this Complaint as though fully set forth herein.

41. The United States Supreme Court has long held that "the Fifth Amendment…was designed

to bar Government from forcing people alone to bear public burdens which, in all fairness and

justice, should be borne by the public as a whole." *See Armstrong v. United States*, 364 U.S. 40, .

(1960).

42. Defendant's Orders and Emergency Directives mandated that because Plaintiffs were "Non-

Essential Businesses", they were required to "shut down" and cease all operations as a means to

help curb the spread of COVID-19. Such a mandate completely and unconstitutionally deprived

Plaintiffs of all economically beneficial use of their businesses without just compensation.

43. While the "police power" is inherent in a sovereign government and is reserved for the States

in the Tenth Amendment to the U.S. Constitution, it is not without constitutional limits.

However, a government's "police power" in this area is restricted by Constitutional

considerations, including the Fifth Amendment's "Takings Clause", as well as Due Process and

Equal Protection.

44. The Orders and Emergency Directives issued by the defendant, Governor Baker, effectively

amount to an impermissible "partial" or "complete" taking in violation of the Takings Clause of

the Fifth Amendment to the U.S. Constitution in that the prohibition of Plaintiffs' operation of

their "Non-Essential Business" constitutes a regulatory taking of private property, for public

purpose, without providing just compensation therefore.

45. The Orders and Emergency Directives violate the Takings Clause of the Fifth Amendment in

that the complete prohibition of the business operations of "Non-Essential Businesses"

constitutes an irrational, arbitrary, and capricious law bearing no rational basis to any valid

government interest.

46. The notion that the government-ordered shutdown of "Non-Essential Businesses" (such as

Plaintiffs') is absolutely necessary in curbing the spread of COVID-19 constitutes an

unconstitutional infringement on Plaintiffs' civil rights and liberties to operate in a free-market

economy.

47. As a result, Defendant's blatant violation of the Takings Clause of the Fifth Amendment has

caused proximate and legal harm to Plaintiffs.

48. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to

their constitutional rights unless Defendant is enjoined from implementing and enforcing the

Orders and Emergency Directives.

49. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to money damages,

declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and

restraining enforcement of the Orders and Emergency Directives.

50. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights

under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42

U.S.C. § 1988.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF

VIOLATION OF PLAINTIFFS' PROCEDURAL AND SUBSTANTIVE DUE PROCESS
RIGHTS GUARANTEED BY THE FIFTH and FOURTEENTH AMENDMENTS T0 THE U.S.
CONSTITUTION AND ARTICLES 1, 10 and 12 OF THE MASSACHUSETTS
DECLARATION OF RIGHTS

51. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

52. The Orders and Emergency Directives further violate the substantive and procedural due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution and Articles 1, 10 and 12 of the Massachusetts Declaration of Rights.

53. The Governor's Orders and Emergency Directives provide the Plaintiffs with no process whatsoever.

54. Plaintiffs have a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment.

55. The Orders and Emergency Directives, and Defendants' enforcement thereof, violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution.

56. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights.

57. Defendant's Orders and Emergency Directives, which expressly deprive Plaintiffs of their rights and liberties by prohibiting the lawful operation of their businesses by ordering the closure

of "NonEssential Businesses", did not afford Plaintiffs with a constitutionally adequate hearing with which to present their case for their businesses to not be shut down.

58. At a minimum, Plaintiffs aver that they should have been able to decide for themselves whether or not to "shut down",  if their businesses / business models were not properly equipped to deal with the health and safety guidelines as issued by the Federal and State Governments in connection with the COVID-19 crisis.

59. Defendant failed to comply with the procedural and substantive requirements of the U.S. Constitution in connection with Plaintiffs' rights and liberties as they relate to their respective properties/businesses which would have given Plaintiffs a meaningful opportunity to respond to the proposed Orders and Emergency Directives and to explain how and why they were so deeply flawed and unconstitutional as applied to Plaintiffs.

60. Because Defendant's decisions in issuing the Emergency Directives were made in reliance on procedurally deficient and substantively unlawful processes, Plaintiffs were directly and proximately deprived of their property and liberties, and consequently, their ability to lawfully operate their businesses, without unconstitutional government overreach.

61. Because Defendant's decisions were made in reliance upon arbitrary and capricious processes, with respect to their ability to order the state-wide "closure" of all "Non-Essential Businesses", Plaintiffs were directly and proximately deprived of their property rights and liberties absent substantive due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution and Articles 1, 10 and 12 of the Massachusetts Declaration of Rights.

62. The Defendant's Orders and Emergency Directives violate Plaintiffs' rights to due process and equal protection and are not "narrowly tailored" to further any compelling governmental

interest. Defendant has granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "Essential Businesses" and activities, provided that social distancing practices are observed. Since these gatherings may be permitted, there can be no doubt that Defendant may, and therefore must, permit Plaintiffs to engage in equivalent business provided that Plaintiffs also adhere to the social distancing requirements.

63. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

64. The COVID-19 Closure Orders enacted by Governor Baker constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution and Articles 1, 10 and 12 of the Massachusetts Declaration of Rights.

65. Defendants has acted under color of state law with the intent to unlawfully deprive the Plaintiffs of their liberty and property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution and Articles 1, 10 and 12 of the Massachusetts Declaration of Rights.

66. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from implementing and enforcing the Orders and Emergency Directives.

67. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to money damages, declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

68. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## PLAINTIFFS' THIRD CAUSE OF ACTION

### THIRD CLAIM FOR RELIEF VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT and ARTICLE 10 OF THE MASSACHUSETTS DECLARATION OF RIGHTS

69. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

70. At its core, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups.

71. The Orders and Emergency Directives, and Defendants' enforcement thereof, violate the Fourteenth Amendment, both facially and as-applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the State to govern impartially—not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objection.

72. Defendant has intentionally and arbitrarily categorized Massachusetts businesses and conduct as either "Essential" or "Non-Essential." Those businesses classified as "Essential," or as participating in "Essential Services", are permitted to go about their business and activities

provided certain social distancing practices are employed. Those classified as "Non-Essential," or as engaging in "Non-essential" activities, are required to shut down and have their workers stay in their residences, unless it becomes absolutely necessary for them to leave for one of the enumerated "Essential" activities.

73. Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right.

74. Defendants cannot satisfy strict scrutiny because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

75. The Orders and Emergency Directives plainly violate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments in that they unconstitutionally and disparately apply one set of rules to businesses arbitrarily deemed "Essential Businesses" versus all other businesses (such as Plaintiffs') that are deemed "Non-Essential Businesses", which must close pursuant to the Orders and Emergency Directives.

76. Plaintiffs aver that ALL businesses in the Commonwealth of Massachusetts are "Essential" to the health, welfare, and well-being of its citizens, and that the general health outcome sought through the passage of these Orders and Emergency Directives (i.e., lowering the curve of COVID-19) could be accomplished through less restrictive means.

77. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from implementing and enforcing the Orders and Emergency Directives.

78. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to money damages, declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

79. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.


## PLAINTIFFS' FOURTH CAUSE OF ACTION

### GOVERNOR BAKER'S ORDERS AND DIRECTIVES PURSUANT TO THE CIVIL DEFENSE ACT ARE UNLAWFUL, NULL and VOID

80. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

81. Undeniably, COVID-19 is a contagious and sometimes deadly virus. It is cause for great public concern and warrants action to protect those at risk, however, fear of the virus cannot justify suspending the constitutional order of Massachusetts government nor the constitutional rights of its citizens.

82. On March 10, 2020, Governor Baker declared a state of emergency pursuant to the Civil Defense Act, to "mitigate the spread of COVID-19 to protect the health and welfare of the people of the Commonwealth."

83. Governor Baker's Executive Order claimed authority to declare a Civil Defense State of Emergency under Chapter 639 of the Acts of 1950. Mass. Exec. Order No. 591.

84. All of Governor Baker's subsequent COVID-19 related orders have likewise been issued based upon his claimed powers as set forth in "Sections 5, 6, 7, 8, and 8A of Chapter 639 of the Acts of 1950, as amended, and other provisions of law[.]" Mass. Exec. Order No. 591.

85. The Civil Defense Act is a Cold War-era statute designed to aid in the defense of Massachusetts from foreign invasions, insurrections, and catastrophic events like hurricanes and fires.

86. The COVID-19 health crisis is not one "such disaster," as it is not an attack, sabotage, or hostile action that could justify the declaration of a Civil Defense State of Emergency.

87. COVID-19 marks the first time in history that a Massachusetts governor has applied the Civil Defense Act to a health crisis.

88. The General Court delegated to the executive branch the authority to act decisively in the event of an infectious disease outbreak. The statutory authority is not the Civil Defense Act, but rather the Public Health Act, Massachusetts General Laws Chapter 111. 17

89. The Public Health Act tasks the Department of Public Health, its Commissioner, its Council, and local boards of public health, with the responsibility of protecting the public from "disease dangerous to the public health." G.L. c. 111, § 1.

90. Through the Public Health Act, the General Court delegated limited authority to the executive branch for infectious disease control and mitigation. It did not delegate any infectious disease control and mitigation authority in the Civil Defense Act.

91. The Public Health Act predates the Civil Defense Act, in one form or another, the by almost 50 years. See Acts of 1907, c. 183, § 1 (requiring the state board of health to define what diseases are "dangerous to the public health").

92. Indeed, the Public Health Act's section "Definitions" (G.L. c. 111, § 1) alone has been amended 11 times since first appearing as its own section in the Act in 1938— *nine of those amendments coming after enactment of the Civil Defense Act.*

93. It is apparent that the General Court did not enact two conflicting sources of statutory authority to combat pandemics.

94. The Public Health Act's purpose is to control and prevent infectious diseases dangerous to the public health.

95. Pursuant to the authority delegated to the Department of Public Health by the Act, the Department has promulgated infectious disease control regulations "to establish reporting, surveillance, isolation and quarantine requirements."

96. Governor Baker is not acting pursuant to the Public Health Act, despite its obvious applicability to the COVID-19 health crisis.

97. Governor Baker has instead used the inapposite Civil Defense Act state of emergency and its wide-ranging civil defense authority to issue more than 30 orders that waive or modify laws validly enacted by the state legislature.

98. Governor Baker has arbitrarily declared which businesses are "essential" and he has closed those that he has deemed to fall outside of that category.

99. DPH adopted an Infectious Disease Emergency Response Plan more than two weeks prior to the Civil Defense State of Emergency declaration, pursuant to Chapter 111 of the Public Health Act. See Mass. Dept. of Pub. Health, Infectious Disease Emergency Response Plan (Feb. 24, 2020).

100. The disease, "coronavirus," first appeared in the Code of Massachusetts Regulations at least 16 years ago.  See, e.g., Code of Mass. Regs., 100 CMR 300.100 (requiring reporting of "novel coronavirus" to local boards of health) and 100 CMR 300.170 (requiring labs to report "novel coronavirus" to DPH).

101. Because his orders are being made pursuant to a statute designed to defend against foreign invaders and civil unrest in the wake of cataclysms, violations of his orders are null and void.

102. Similar to statutes in other states, the 70-year-old Massachusetts law that gives Baker his emergency powers authorizes him to unilaterally choose not just when to declare an emergency but when to end it. That means he can exercise that broad authority for an undefined amount of time and with few, if any, specified checks in the law itself.

103. "The justification of a governor taking on the function of the Legislature in that context is there's not enough time for the Legislature to get together and make new laws. That justification gets weaker and weaker the longer the state of emergency goes on."

104.  Governor Baker has ignored the separation of powers by usurping the police power—the Commonwealth's authority to regulate the health and welfare of its people—from the General Court. The police power is the exclusive prerogative of the legislature, and only the legislature may exercise it, or delegate its authority to the executive branch.

105. In the case of infectious disease, the General Court has delegated authority to the Department of Public Health, its Commissioner, its Council, and local boards of health. Their authority does not extend to the subject matters of Governor Baker's decrees, and they cannot suspend or amend other laws.

106. To the extent that it may be necessary to suspend laws to address the COVID-19 health crisis, only the legislature may enact law to make it so.

107. Governor Baker's actions are analogous to those of the head of Wisconsin's Department of Health Services (DHS), Andrea Palm, wherein the state Legislature also argued that Palm "exceeded her authority by ordering everyone to stay home, closing all "non-essential" businesses, prohibiting private gatherings of any number of people who are not part of a single household, and forbidding all "non-essential" travel." On May 13, 2020 the Wisconsin Supreme Court agreed, concluding that Order 28 "clearly went too far" and exceeded DHS's authority under Wis. State. §252.02. *See Wisconsin Legislature v. Palm,* Wisconsin State Supreme Court Case No. 2020AP765-OA.

109. Since the Wisconsin Supreme Court declared Order 28 invalid and unenforceable and declined to issue a stay, all restrictions imposed on businesses (except schools) under Emergency Order No. 28 were immediately lifted.

108. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendant is enjoined from implementing and enforcing the Orders and Emergency Directives.

108. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to money damages, declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

109.  Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.


**WHEREFORE,** for all of the aforestated reasons, Plaintiffs pray for the following relief:

i.      A declaratory judgment that COVID-19 Executive Order No. 13 and COVID-19 Executive Order No. 19, and Defendant's policies, practices, customs and related enforcement actions, individually and/or collectively, DENY THE PLAINTIFFS OF THEIR FIFTH AND 14TH AMENDMENT RIGHTS  and thus violate the Fifth and Fourteenth Amendments;

ii.     A declaratory judgment that COVID-19 Executive Order No. 13 and COVID-19 Executive Order No. 19, and Defendant's policies, practices, customs and related enforcement actions, individually and/or collectively, are null and void as they were improperly asserted as a "Civil Defense State of Emergency" under Chapter 639 of the Acts of 1950. Mass. Exec. Order No. 591.

iii.    a preliminary and/or permanent injunction restraining Defendant and his officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing COVID-19 Executive Order No. 13 and COVID-19 Executive Order No. 19.

iv.     such other and further relief, including injunctive relief, against Defendant, as may be

        necessary to effectuate the Court's judgment, or as the Court otherwise deems just

        and equitable; and

**v.**     attorney's fees and costs (including incidental costs such as expert witness fees)

        pursuant to 42 U.S.C. § 1988 and any other applicable law.

## PLAINTIFFS CLAIM AND DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE

Dated: June 18, 2020

Respectfully submitted,

THE PLAINTIFFS,

By their attorney,

*/Richard P. McClure/*

Richard P. McClure, Esquire

14 Morgan Drive

Chelmsford, MA 01824

(508) 572-2418

BBO# 564713

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and paper copies will be sent to those indicated as non-registered participants on June

18, 2020.

*/Richard P. McClure/*