UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WORLD GYM, INC., BF OF CHELMSFORD, INC., BF OF LOWELL, INC., BF OF SPRINGFIELD, INC., BF OF DANVERS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES D. BAKER,<br><br>Defendant. | Civil Action No. 20-cv-11162-DJC |
| WORLD GYM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHALRES D. BAKER,<br><br>Defendant. | Civil Action No. 20-cv-11238-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                             **July 24, 2020**

### Introduction

Plaintiffs, Gym World Inc., BF of Chelmsford, Inc., BF of Lowell, Inc., BF of Springfield, Inc. and BF of Danvers, LLC filed the earlier suit here, D. 1, and moved for injunctive relief on

June 26, 2020, D. 4.  On June 29, 2020, World Gym Inc. filed a similar suit, 20-cv-11238, D. 1, and moved for injunctive relief the following day, 20-cv-11238, D. 5.  The sole defendant in both cases is Governor Charles D. Baker (the "Governor").  D. 1; 20-cv-11238, D. 1.  Upon a joint motion of the parties, the Court consolidated the two cases in this session.  D. 13-14; 20-cv-11238, D. 14, 16.  Plaintiffs are all gyms located in Massachusetts that seek injunctive relief enjoining Defendant, the Governor, from enforcing the March 23, 2020 COVID-19 Executive Order No. 13 (the "March 23rd Order") and related orders.  D. 1; 20-cv-11238, D. 1.  The Governor opposes these motions.  D. 12; 20-cv-11238, D. 13.  For the reasons stated below, the Court DENIES the motions for injunctive relief.  D. 4; 20-cv-11238, D. 5.

## Factual Background

In response to COVID-19 pandemic, the Governor issued the March 23rd Order requiring all businesses and other organizations that do not provide essential services to close.  D. 4-1 at 2; 20-cv-11238, D. 6 at 2.  The March 23rd Order originally was set to expire on April 7, 2020 and included an attachment with a list of business types deemed essential.  D. 4-1 at 2-3; 20-cv-11238, D. 6 at 2-3.  Fitness facilities were not included in the list of essential businesses.  D. 4-1 at 3-4; 20-cv-11238, D. 6 at 2-4.  In accordance with the March 23rd Order, Plaintiffs closed its fitness facilities and suspended monthly member billings.  D. 4-1 at 4; 20-cv-11238, D. 6 at 4.  As a result, Plaintiffs were unable to meet certain business expenses including rent and had to lay off all staff members and personal trainers.  D. 4-1 at 4; 20-cv-11238, D. 6 at 4.

After extending the March 23rd Order several times, on May 18, 2020, the Governor introduced a four-phase plan for reopening businesses previously designated "non-essential" under his previous orders, including the March 23rd Order.  D. 4-1 at 3.  The four-phase plan provided for fitness gyms, including Plaintiffs' facilities, to open during Phase III.  D. 4-1 at 3; 20-cv-11238,

D. 6 at 3.  On July 2, 2020, the Governor announced Phase III would begin and all gyms outside of Boston, including all the gyms operated by Plaintiffs, would be permitted to open on July 6th. D. 12 at 9-10.  Accordingly, on July 6, 2020, Plaintiffs' gyms, none of which are in Boston, were permitted to reopen under the Governor's plan subject to certain safety guidelines. D. 12 at 9-10.[1]

## Discussion

Injunctive relief "is an 'extraordinary and drastic remedy.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)).  To obtain such relief, the Court must consider:  (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest.  Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013).  Plaintiffs "bear[] the burden of establishing that these four factors weigh in [their] favor." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (citation omitted).

### A.   Mootness

As an initial matter, the Governor contends that Plaintiffs' request for injunctive relief is now moot.  D. 12 at 11.  The doctrine of mootness requires that an actual controversy be "extant at all stages of the review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974).  A claim for injunctive relief is moot if the Court "cannot grant any 'effectual relief' by ordering the injunction" because "the parties no longer have a legally cognizable stake in the outcome." In re Light Cigarettes Marketing Sales Practices Litigation, 271 F.R.D. 402, 422 (D. Me. 2010) (quoting N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 73 (1st Cir. 2006)) (internal quotation marks omitted).  To the extent Plaintiffs' motions for injunctive

---

[1] One of Plaintiffs' gyms is located in Somerville, where the city delayed the start of Phase III within city limits, D. 12 at 4 n.1, but this was an order by city, not by the Governor, the defendant in this case.

relief seeks an order enjoining the enforcement of the March 23rd Order and related orders causing Plaintiffs' fitness facilities to close as non-essential businesses, these requests are moot as the Governor has now lifted restrictions as to Plaintiffs' fitness facilities. See Davidson v. Howe, 749 F.3d 21, 26 (1st Cir. 2014) (explaining that "a court can provide no meaningful relief to the challenging party since, once the plan ceases to be operative, there is no plan left to enjoin").

Despite this turn of events, Plaintiffs appear to suggest that some relief should be granted now since the Governor's challenged conduct is capable of repetition yet evading review. Such doctrine, even assuming it otherwise applies, is limited to "'exceptional situations,' . . . where a plaintiff can show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 57 (1st Cir. 2013) (first quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983), then quoting Gulf of Me. Fisherman's Alliance v. Daley, 292 F.3d 84, 89 (1st Cir. 2002)). Neither condition is met here.

As to the first consideration, it cannot be said that this is an inherently transitory claim, that is likely to evade review. See, e.g., Moore v. Ogilvie, 394 U.S. 814, 816 (1969); Roe v. Wade, 410 U.S. 113, 125 (1973). Indeed, Plaintiffs waited until June to bring this case, when the challenged action began in March, see D. 1. In the interim, multiple courts have been asked to address the validity of states' COVID-19 orders. See, e.g., Calvary Chapel of Bangor v. Mills, No. 20-cv-00156-NT, 2020 WL 2310913, at *10 (D. Me. May 9, 2020) (denying temporary restraining order challenging the governor's order limiting gathering sizes); Tex. Democratic Party v. Abbott, 961 F.3d 389, 412 (5th Cir. 2020) (staying injunction concerning voting access during COVID-19). "The capable-of-repetition doctrine is not meant to save mooted cases that may have

remained live but for the neglect of the plaintiff." Newdow v. Roberts, 603 F.3d 1002, 1009 (D.C. Cir. 2010).

As to the second consideration, Plaintiffs cannot establish a "reasonable expectation" or "demonstrated probability," Am. Civil Liberties Union of Mass., 705 F.3d at 57, that the Governor will issue a future order closing all fitness facilities.[2] Although it remains possible that Massachusetts will experience a resurgence of rapid COVID-19 cases, it cannot be said that there is a "demonstrated probability" that one will occur and, if one does occur, that the Governor will execute the same orders. See Davidson, 749 F.3d at 26-27 (capable-of-repetition-yet-evading review doctrine requires a reasonable expectation that the complaining party would be subject to the same "alleged illegality"); Newspaper Guild of Salem, Local 105 of the Newspaper Guild v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1278 (1st Cir. 1996) (noting that a mere speculative possibility of repetition of the challenged conduct cannot avoid application of the mootness doctrine).

Having concluded that the relief Plaintiffs seek from the March 23rd Order is moot and the noted exception to the mootness doctrine does not apply, this Court need not reach the four-prong test for injunctive relief, see Barlow v. SPS Select Portfolio Servicing, Inc., 343 F. Supp. 3d 5, 7 (D. Mass. 2018). In the interest of completeness, however, the Court addresses the likelihood of

---

[2] As it remains unclear what future measures the Governor might take and whether the pandemic may justify such actions in the future, the Court cannot say that such measures would necessarily warrant relief, particularly in light of rulings from state and federal courts rejecting requests to enjoin states from enforcing similar orders against fitness facilities. See League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer, No. 20-1581, 2020 WL 3468281, at *4 (6th Cir. June 24, 2020) (granting the Michigan governor's emergency motion to stay a district court's preliminary injunction because the plaintiffs-fitness facilities were not likely to succeed on the merits); Impact Fitness, LLC v. Baker, Case No. 20-0601-B, slip op. at 1 (Mass. Super. June 19, 2020) (denying motion for preliminary injunction seeking to reopen fitness facility) (docketed at D. 12-2).

success of the merits, the likelihood of the movant suffering irreparable harm in the absence of the relief sought, the balance of equities and whether granting the injunction is in the public interest.

**B.     Considering the Factors for Injunctive Relief**

*1.     Likelihood of Success on the Merits*

a)     State Law Claims

As to Plaintiffs' state law claims, they are barred by the Eleventh Amendment. The Eleventh Amendment bars state law claims against the state in federal court. Wilborn v. Walsh, 584 F. Supp. 2d 384, 391 (D. Mass. 2008) (stating that "it is well established 'that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment'") (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984)). "[S]tate agencies and state officials in their official capacity are indistinguishable from the state for purposes of the Eleventh Amendment" so the Governor in his official capacity is immune from suit under the Eleventh Amendment. See Boulais v. Massachusetts, No. 00-cv-12086-GAO, 2002 WL 225936, at *1 n.1 (D. Mass. Jan. 30, 2002). Accordingly, the Plaintiffs are not likely to succeed on the merits of their state law claims.

b)     Constitutional Claims

Plaintiffs make two constitutional challenges to the Governor's actions regulating their fitness facilities in response to COVID-19: an equal protection challenge and a due process challenge. D. 4-1 at 6-15; 20-cv-11238, D. 6 at 6-15. "When economic legislation does not employ classifications subject to heightened scrutiny or impinge on fundamental rights, courts generally view constitutional challenges with the skepticism due to respect for legislative choices

demands." Levin v. Commerce Energy, Inc., 560 U.S. 413, 426 (2010). Here, Plaintiffs have identified no classification, cf. Loving v. Virginia, 388 U.S. 1, 11 (1967); United States v. Virginia, 518 U.S. 515, 532-33 (1996), or other fundamental right, cf. Thomas v. Andino, No. 20-cv-01552-JMC, 2020 WL 2617329, at *15 (D.S.C. May 25, 2020); Bayley's Campgrounds, No. 20-cv-00176-LEW, 2020 WL 2791797, at *9 (D. Me. May 29, 2020), that would entitle them to any heightened review. "[States'] latitude 'must be especially broad'" in "'areas fraught with medical and scientific uncertainties,'" like the public health crisis presented by COVID-19. S. Bay United Pentecostal Church v. Newsom, __ U.S. __, 140 S. Ct. 1613, 1613 (2020) (Mem.) (Roberts, C.J., concurring in the denial of application for injunctive relief) (citing Marshall v. United States, 414 U.S. 417, 427 (1974)).

First, as to Plaintiffs' equal protection claims, Plaintiffs cannot demonstrate they are likely to succeed on the merits as they are not entitled to any heightened scrutiny and the Governor's action is rationally related to a legitimate government interest. When economic legislation does not employ classifications subject to heightened scrutiny, the test is whether same is supported by a rational basis in furtherance of a legitimate government interest. See Dickerson v. Latessa, 872 F.2d 1116, 1119 (1st Cir. 1989). Here, as this Court explained above, Plaintiffs have not identified any suspect classification that would entitle them to any heightened review under the equal protection clause. Indeed, the courts reviewing business closures due to COVID-19 have consistently applied rational basis review. See Xponential Fitness v. Arizona, No. CV-20-01310-

PHX-DJH, 2020 WL 3971908, at *7 (D. Ariz. July 14, 2020); League of Indep. Fitness Facilities & Trainers, Inc., 2020 WL 3468281, at *2; McCarthy v. Cuomo, No. 20-CV-2124 (ARR), 2020 WL 3286530, at *6 (E.D.N.Y. June 18, 2020).

"A law survives rational basis review so long as the law is rationally related to a legitimate governmental interest." Cook v. Gates, 528 F.3d 42, 55 (1st Cir. 2008) (citing Nordlinger v. Hahn, 505 U.S. 1, 11-12 (1992)). Plaintiffs agree that the Governor has a compelling interest in protecting the public against the health crisis. D. 4-1 at 7. The Governor's "interest in protecting public health during such a time is at its zenith," In re Abbott, 954 F.3d at 795, and, therefore, qualifies as a legitimate government interest, Talleywhacker, Inc. v. Cooper, No. 20-CV-218-FL, 2020 WL 3051207, at *9 (E.D.N.C. June 8, 2020). Contrary to Plaintiffs' assertion that the choice to designate fitness facilities non-essential was arbitrary, the Governor based the decision upon medical and scientific evidence and research, D. 12 at 18-19, and was, thus rationally related to that interest. An affidavit from Dr. Monica Bharel, the Massachusetts Department of Public Health Commissioner, attests that the decision regarding fitness facilities was supported by, among other things, research that fitness facilities tend to have a high burden of pathogens on surfaces contributing to ease of spread, the fact that people increase volume and the rate of breathing during exercise causing an increased risk of spread during exercise and a study linking COVID-19 cases to fitness facilities in South Korea that cited the intensity of the workout and warm, moist air as a contributing factor to the spread of the virus. D. 12-4 ¶¶ 20-25. Accordingly, the Governor's

actions were rationally related to a legitimate interest and do not violate the equal protection clause. Xponential Fitness, 2020 WL 3971908, at *9 (holding fitness facilities challenging COVID-19 measures are not likely to succeed on their equal protection claims); League of Indep. Fitness Facilities & Trainers, Inc., No. 20-1581, 2020 WL 3468281, at *3-4 (same).

Second, Plaintiffs are also not likely to succeed on their claim that the Governor's order deprived them of procedural due process. To prevail on this claim, Plaintiffs must establish that they were deprived of a constitutional property or liberty interest without due process of law. See S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 85-86 (1st Cir. 2014). Even assuming Plaintiffs' have some valid property interest, which the Governor disputes as a matter of law, D. 12 at 22 and cases cited, compare Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999) (explaining that "business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense") with Hartman v. Acton, No. 20-CV-1952, 2020 WL 1932896, at *7 (S.D. Ohio Apr. 21, 2020) (summarizing plaintiffs' interest in their continued operation of their business for due process purposes), "summary administrative action may be justified in emergency situations," Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 300 (1981). This is because "[b]y their nature, emergency situations require an immediate response. And, in consequence of 'the necessity of quick action by the State,' constitutional due process does not require the usual up-

front procedural protections in dealing with emergencies." S. Commons Condo. Ass'n, 775 F.3d at 86.

"[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected." Bayley's Campground Inc., 2020 WL 2791797, at *12. Here the Governor acted in response to that scenario, D. 12-4 ¶¶ 8-10, and so the initial closure without individual hearings does not offend due process. Benner v. Wolf, No. 20-cv-775, 2020 WL 2564920, at *4 (M.D. Pa. May 21, 2020) (holding that plaintiffs were not likely to succeed on their deprivation of due process argument and explaining that "individualized pre-deprivation process" would "render ineffective any public health measure meant to combat viral spread"); see Hartman, 2020 WL 1932896, at *10 (denying a request to enjoin the state's closure order because it "applied to all non-essential businesses and was not a decision targeting Plaintiff's business individually, [and, therefore,] Plaintiff's constitutional right to procedural due process was not violated").

Nor are the Plaintiffs likely to succeed on their substantive due process claims. Plaintiffs argue that the Governor's orders "shock the conscious." D. 4-1 at 11; 20-cv-11238, D. 6 at 10-11. "Executive branch action that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in 'conduct intended to injure in some way unjustifiable by any government interest.'" DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)). In light of the toll of the pandemic, this argument is unconvincing. As explained above, the state has a strong interest in stopping the spread of

COVID-19, and accordingly, it cannot be said that the Governor's conduct amounts conscience-shocking action.

### 2. *Irreparable Harm, Public Interests and Balance of Harms*

The remaining factors, irreparable harm, balance of harms and the public interest, also do not weigh in favor of granting the relief sought. While undoubtably, Plaintiffs and many others have suffered a great deal from the global pandemic, the Court does not conclude that the March 23rd Order has led to irreparable harm to these Plaintiffs, particularly where gyms have now been permitted to reopen. During oral argument, Plaintiffs' counsel suggested for the first time that even though the state had entered Phase III and fitness facilities were now permitted to open, injunctive relief was still warranted because the Governor requires gyms to adhere to certain safety practices to reopen. Putting aside that such argument was not made in the parties' motions, the Court cannot say on this record that even such new contention amounts to irreparable harm where there is no suggestion that gyms have been unable to reopen as a result of same. See D. 4-2 ¶ 14; 20-cv-11238, D. 7 ¶ 14 (noting that "[i]f the Court grants the motion for temporary restraining order, plaintiffs will strictly enforce social distancing rules among members, temporarily close locker rooms and showers and require staff to wear masks and gloves as well as constantly disinfecting surfaces and equipment").

In terms of the balancing of the harms and the public interest, enjoining the March 23rd Order here, entered in response to a global health crisis, would simultaneously compromise the

public health while "effectively disregard[ing] the balance of powers established by our federal system." Bayley's Campground Inc., 2020 WL 2791797, at *12.  The public interest here is great, where COVID-19 has infected and taken the lives of numerous Massachusetts residents with the potential to infect more.  League of Indep. Fitness Facilities & Trainers, Inc., 2020 WL 3468281, at *4 (summarizing the public interest in light of the devastating effects of COVID-19).

## Conclusion

Accordingly, the Court DENIES Plaintiffs' motions for injunctive relief.  D. 4; 20-cv-11238, D. 5.

**So Ordered.**

                                            /s/ Denise J. Casper
                                            United States District Judge